# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JUANA AYALA,**

                **Plaintiff,**

**-vs-**                                                                       Case No.  6:11-cv-508-Orl-DNF

**MICHAEL ASTRUE, Commissioner of**
**Social Security,**

                **Defendant.**

_____

## OPINION AND ORDER

**TO THE UNITED STATES DISTRICT COURT**

       This matter comes before the Court on Plaintiff Juana Ayala's Complaint (Doc. 1), filed March 29, 2011, seeking review of the final decision of the Commissioner of the Social Security (Commissioner) denying Plaintiff's claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").[1] Plaintiff filed her Memorandum of Law in support of the Complaint (Doc. 21) on November 17, 2011. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number). The Commissioner filed the Memorandum of Law in support of the Commissioner's decision (Doc. 22) on December 30, 2011. Thus, the case is now ripe for review.

---

[1] Because the disability definitions for DIB and SSI benefits are identical, cases under one statute are persuasive as to the other. *Patterson v. Bowen*, 791 F.2d 1544, 1545 n.2 (11th Cir. 1986).

The Court has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge, the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case. For the reasons set forth herein, it is respectfully recommended that the decision of the Commissioner be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).

## I. Social Security Act Eligibility, Procedural History, and Standard of Review

### A. Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404,1511.

### B. Procedural History

On July 12, 2007, Plaintiff filed an application for DIB and SSI, alleging disability beginning January 1, 2007. (Tr. 124-136). Plaintiff's claim was initially denied on October 19, 2007. (Tr. 68-75). Upon reconsideration Plaintiff's claim was also denied on April 11, 2008. (Tr. 84-95). Thereafter, a Request for Hearing was timely filed. (Tr. 96-97). A hearing was held on December 7, 2009, before Pamela Houston, Administrative Law Judge ("ALJ"). The ALJ's decision, dated February 2, 2010, denied Plaintiff's request for SSI and DIB. (Tr. 14-22). The Appeals Council denied Plaintiff's Request for Review on January 25, 2011. (Tr. 1-6). On March 29, 2009, Plaintiff filed a Complaint with this Court seeking review and entry of judgment. (Doc. 1, p. 1-2).

### C. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). The Court must, "review the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)(citing *Lewis v. Callahan,* 125 F.3d 1436, 1439 (11th Cir.1997))."Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion." *Id.* "Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)(citing *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir.1990)). The Court must, "view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)(citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir.1986)). However, the Court, "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)(citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).

The ALJ must follow a five step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is doing any substantial gainful activity then he is not disabled. 20 C.F.R. § 404.1520(a)(4)(I). The second step considers the medical severity of the impairment: if there is not a severe medically determinable physical or mental impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). The third step also considers the medical severity of the impairment. If the claimant has an impairment that meets or equals one of

the listings and meets the duration requirement, the claimant will be found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii). The fourth step is assessing the residual functional capacity of the claimant, and the claimant's past relevant work. If the claimant can still do his past relevant work then he will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(iv). The fifth step considers the residual functional capacity as well as the age, education, and work experience of the claimant to see if he can make an adjustment to other work. If the claimant can make an adjustment to other work then the claimant will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(v). The Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287 (1987); *see also Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty*, 245 F.3d at 1278 n.2.

## II. Review of Facts

### A. Background Facts

The Plaintiff was born June 16, 1952, and was 57 years old on the date of the ALJ's decision (Tr. 33). The Plaintiff completed high school and one year of college. (Tr. 33). The Plaintiff formerly worked as a clerk/cashier, toll collector, survey taker, room service waitress, busser, and sales representative. (Tr. 175-176). The Plaintiff alleges disability starting January 1, 2007, due to constant pain in her lower back, legs, neck, and shoulders, fibromyalgia, osteoarthritis, restless leg syndrome, high blood pressure, diabetes neuropathy, a kidney problem, asthma, anxiety, and depression (Tr. 37, 41, 169, 174, 191, 196).

### B. The ALJ's Findings

At step one, the ALJ found that the Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010, and has not engaged in substantial gainful activity since January 1, 2007. (Tr. 16.).

At step two, the ALJ found that the Plaintiff has the following severe impairments: 1) diabetes mellitus; 2) osteoarthritis; 3) obesity; and 4) depressed mood associated with bipolar-I disorder. (Tr. 16). The ALJ made these findings after review of the medical evidence, and determined these impairments caused significant limitations in the Plaintiff's ability to perform basic work activities. (Tr. 16). The ALJ found that the Plaintiff's following alleged impairments made at the hearing were not severe: 1) restless leg syndrome; 2) fibromyalgia; and 3) asthma. (Tr. 16). The ALJ made these findings after reviewing the medical evidence and determined these alleged impairments were not severe because they did not last longer than twelve months, or cause significant limitations in the Plaintiff's ability to perform basic work functions. (Tr. 16).

At step three, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520 (d), 404.1526, 416.920(d), 416.925 and 416.925). (Tr. 17). The ALJ determined that: 1) the medical evidence did not document listing-level severity; 2) no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination; 3) no State agency reviewer/consultant/examiner has concluded that the claimant has an impairment of combination of impairments severe enough to meet or equal a listing; 4) no subsequent evidence has been submitted that would alter the previous

conclusions that the claimant has no impairments severe enough to meet or equal a listing; 5) no treating physician has credibly concluded that the claimant has an impairment or combination thereof severe enough to meet or equal a listing. (Tr. 17).

Additionally, the ALJ found that the Plaintiff's, "mental impairment does not meet or medically equal the necessary criteria of listing 12.04." (Tr. 17). The ALJ considered if the mental impairment resulted in at least two of the four following criteria: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (Tr. 17).

The ALJ found in activities of daily living the Plaintiff has no restriction. (Tr. 17). The Plaintiff prepares breakfast for herself, cooks for her daughter and herself at least three times a week, does the dishes, puts her clothes away, and takes care of personal needs like taking a shower and getting dressed. (Tr. 17). The ALJ found that the Plaintiff has mild difficulties in social functioning. (Tr. 17). The Plaintiff lives alone with her daughter, occasionally goes out with her daughter to the grocery store and doctor's appointments, and post-alleged onset date the Plaintiff worked two days a week with the public selling Avon products at a flea market. (Tr. 17, 34). The ALJ found that the Plaintiff had moderate difficulties with concentration and persistence or pace because the Plaintiff's memory, concentration, and attention was found to be limited. (Tr. 17). Lastly, the ALJ found that the Plaintiff has not experienced episodes of decompensation which have been of extended duration. (Tr. 18).

Next, the ALJ found that the Plaintiff:

> Has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can lift and carry twenty pounds occasionally and ten pounds frequently; can sit, stand and walk six hours out of an eight-hour workday and can only occasionally stoop, kneel, crouch and crawl. In addition, she can understand, remember, and carry out simple instruction.

(Tr. 18). The ALJ considered, "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of [the applicable CFR and SSR sections]" and "also considered opinion evidence in accordance with the requirements of [the applicable CFR and SSR sections]." (Tr. 18).

At step four, the ALJ found that the Plaintiff is capable of performing past relevant work and the work does not require the performance of work-related activities precluded by the claimant's residual function capacity ("RFC") (20 C.F.R. 404.1565 and 416.965). (Tr. 21). The ALJ based the RFC determination upon the medical evidence and the testimony of a vocational expert. After questioning the vocational expert, the ALJ determined that the Plaintiff, "is capable of performing the job of *Cashier II* (DOT#211.462-010), an unskilled occupation (SVP-2) of light exertion." (Tr. 22). Based on these findings, the ALJ determined that the Plaintiff was not disabled. (Tr. 22).

### C. Plaintiff's Medical History

On January 8, 2007, Plaintiff had an x-ray of her chest taken. Robert Schultz, M.D., read the x-ray and compared it to x-rays previously taken. Dr. Schultz's report stated there was, "mild elevation of the right hemidiaphragm as seen previously but no acute pulmonary changes." (Tr. 411).

On April 17, 2007, Plaintiff had an abdominal x-ray and pelvic CT scan. The tests revealed an abnormal uterus with fluid in the endometrial canal and a pelvic ultrasound was recommended. No pathology in the abdomen was found to correlate with the pain history. (Tr. 409-410).

On September 6, 2007, Sam Ranganathan, M.D., performed a consultative physical examination at the request of the Social Security Administration ("SSA"). (Tr. 426-429). Dr. Ranganathan diagnosed the Plaintiff with a lumbosacral spine sprain; history of hypertension, dyslipidemia, and diabetes mellitus; and a history of nicotine dependence. (Tr. 427). Dr. Ranganathan noted that during the physical examination the Plaintiff was crying and emotional. (Tr. 427).

On September 7, 2007, Nancy Hinkeldey, Ph. D., performed a psychological examination at the request of the SSA. (Tr. 431-434). Dr. Hinkeldey noted that the Plaintiff's chronic pain issues, "are likely related to depression to some degree," Plaintiff's, "functional ability appears marginal from a mental health perspective," and Plaintiff has, "mild symptoms of depression, which is treated with improvement."(Tr. 433).

On September 16, 2007, Plaintiff was admitted to Florida Hospital complaining of diarrhea, nausea, vomiting, and lightheadedness. (Tr. 437). The Plaintiff's MRI revealed T11-T12 and T12-L1 facet arthropathy with no disk herniation, canal stenosis, or cord compression. (Tr. 437). Lumbar spine films revealed a shallow center to the right L5-S1 posterior protrusion, which approaches the traversing right S1 root and is accompanied with disk dehydration. (Tr. 437). The Plaintiff's EKG was noted to be abnormal with a left anterior hemi-block and a poor R wave progression in the anterior leads. (Tr. 437). The Plaintiff had no further nausea and vomiting for the 24 hours prior to discharge. (Tr. 437). Plaintiff was advised of the medical necessity for better blood sugar control. (Tr. 437).

On October 2, 2007, Clarence Louis, M.D., performed a Physical Residual Functional Capacity of the Plaintiff at the request of the SSA. Dr. Louis found that the Plaintiff had symptoms attributable to a medically determinable impairment. (Tr. 485). Dr. Louis stated that the Plaintiff's symptoms

appear to be partially credible but, "The severity of the symptoms and the alleged effect on function is not entirely consistent with the total medical and nonmedical evidence . . ." (Tr. 485).

On October 17, 2007, Pamela Green, Ph.D., performed a Mental Residual Functional Capacity Assessment of the Plaintiff at the request of the SSA. Dr. Green's report stated the Plaintiff could understand short simple routine data, possessed social skills, and had reduced concentration and persistence. (Tr. 489). Dr. Green's chart indicated that the Plaintiff's ability to carry out very short and <u>simple instructions</u> was not significantly limited. (Tr. 488). However, the chart indicated that Plaintiff's ability to carry out <u>detailed instructions</u> was moderately limited. (Tr. 488).

On February 11, 2008, the SSA referred the Plaintiff for another physical consultative examination performed by Dr. Ranganathan. (Tr. 506). Dr. Ranganathan indicated that the Plaintiff had a lumbosacral spine sprain; possible degenerative joint disease; possible osteoarthritis of the knees and ankle; and a history of diabetes mellitus II, dyslipidemia and depression. (Tr. 507). Dr. Ranganathan noted that the Plaintiff cried during the examination. (Tr. 507).

On February 18, 2008, Plaintiff became a new patient with Magdalena Beltre, M.D. (Tr. 510). Dr. Beltre noted that the Plaintiff stated her glucose levels were under better control but she was more depressed than before. (Tr. 510). Dr. Beltre discontinued the depression medication Lexapro and started the Plaintiff on Prozac. (Tr. 511).

On March 18, 2008, Plaintiff had a Physical Residual Functional Capacity Assessment at the request of the SSA performed by Violet Stone, M.D. Dr. Stone stated that the Plaintiff's symptoms were partially credible and consistent with medical findings. (Tr. 521).

On April 11, 2008, Plaintiff had a Mental Residual Functional Capacity Assessment and Psychiatric Review Technique at the request of the SSA performed by Theodore Weber M.Div., Psy. D. (Tr. 524-527). Dr. Weber found that the Plaintiff: would be able to understand, remember, and carry out simple instructions; would have difficulty with more detailed instructions; would be able to cooperate and be socially appropriate; and would be able to react/adapt appropriately to the work environment but would have some difficulties setting realistic goals. (Tr. 526). Dr. Weber found that overall the Plaintiff is, "capable of completing simple tasks on a regular basis from a mental standpoint." (Tr. 526). Furthermore, that the Plaintiff's major physical functional limitations are, "mainly attributable to a physical condition." (Tr. 526).

On June 2, 2008, Plaintiff was admitted and discharged from Florida Hospital in Altamonte Springs. Plaintiff's chief complaints were a headache and pain. The clinical impression stated Plaintiff had sinusitis. (Tr. 559-562).

On November 12, 2008, Plaintiff was admitted to Florida Hospital in Orlando for hyperglycemia and generalized weakness. (Tr. 542). Plaintiff's assessment stated Plaintiff's diabetes was uncontrolled and Plaintiff had an abnormal EKG. (Tr. 543). The Plaintiff was admitted to rule out myocardial infection and to adjust her insulin regimen. (Tr. 543).

On December 27, 2008, Plaintiff was admitted to the Florida Hospital in Orlando complaining of abdominal pain, nausea and vomiting, and diarrhea. (Tr. 563). It was determined that the Plaintiff had acute gastroenteritis, dysfunctional uterine bleeding, diabetes mellitus, hypertension, fibromyalgia, and osteoarthritis. (Tr. 563-564).

On March 23, 2009, Plaintiff was hospitalized because of a fall. (Tr. 583). The discharge diagnosis stated that Plaintiff had: left ankle strain and left knee strain; diabetes type 2; hypertension; dyslipidemia; osteoarthritis; and fibromyalgia. (Tr. 583). Plaintiff's x-rays showed no acute fracture of her left ankle or knee. (Tr. 583). Plaintiff's MRI showed a, "fracture to posterior aspect of lateral tibial plateau with 2mm to 3 mm of depression, medial collateral ligament (MCL) sprain or partial tear, and left join effusion." (Tr. 583).

On July 20, 2009, Plaintiff was admitted to the hospital complaining of abdominal pain. (Tr. 545). Ahmad Amawi, M.D., performed a physical on the Plaintiff. Dr. Amawi stated that the Plaintiff had an urinary tract infection, chronic constipation, diabetes, hypertension, osteoarthritis, and fibromyalgia. (Tr. 546). Plaintiff had a CT of the abdomen and pelvis which was compared to a previous scan from February 2008. (Tr. 546). The Plaintiff also took Omnipaque orally and Optiray intravenously. The findings stated that the Plaintiff had fatty infiltration of the liver, a normal spleen, adrenals, and pancreas, and that both kidneys functioned. (Tr. 547). A gastric emptying study revealed a moderate to severe delay in gastric emptying (Tr. 549).

On October 13, 2009, Plaintiff had a medical clearance appointment with Dr. Beltre for a hysterectomy scheduled for November 5, 2009. (Tr. 614). Plaintiff was referred to a cardiologist because Plaintiff complained of chest pain and was scheduled for a stress test. (Tr. 614).

On October 20, 2009, Vikas Verma, M.D., performed a stress test on the Plaintiff. (Tr. 623). The stress test revealed: no evidence of inducible myocardial ischemia or prior myocardial infarction; overall preserved LV systolic function with an ejection fraction of 65%; nondiagnostic EKG portion of an adenosine dual-isotope nuclear stress test; occasional PVCs were noted; and no cardiac symptoms were noted. (Tr. 624).

On January 18, 2010, Plaintiff was admitted to Florida Hospital in Altamonte complaining of left-sided chest pain and nausea and vomiting. (Tr. 633). Plaintiff was sent for a 64 slice CT and assessed to have diabetes, gastroparesis, and obesity. (Tr. 634). Plaintiff was discharged January 20, 2010. (Tr. 634).

On April 24, 2010, Plaintiff was admitted to Florida Hospital in Altamonte with symptoms of bronchitis and suspicion of pneumonia. (Tr. 628). Plaintiff had right-sided pneumonia and was treated aggressively because of breathing and respiratory insufficiency. (Tr. 628). Plaintiff was discharged April 27, 2010 and instructed to follow up with her primary care physician Dr. Beltre. (Tr. 628).

On October 18, 2010, Plaintiff was admitted to Winter Park Memorial Hospital complaining of substernal chest pain. (Tr. 636). The admitting diagnosis stated Plaintiff had: atypical chest pain; diabetes; hypertension; obesity; gastroesophageal reflux disease; tobacco abuse; and medication and dietary noncompliance. (Tr. 636). Plaintiff was discharged October 19, 2010, and counseled on the importance of diabetes management. (Tr. 636).

## III.   Specific Issues and Conclusions of Law

Plaintiff raises two issues on appeal. As stated by the Plaintiff, they are: (1) The ALJ erred in determining that the claimant has the RFC to perform light work with the ability to understand, remember, and carry out simple instructions. Specifically, Plaintiff alleges that no other examining or non-examining physician indicated that the claimant had the RFC as determined by the ALJ and the ALJ failed to consider all the medical evidence. (2) The ALJ erred in finding that the Plaintiff's subjective pain complaints were not credible when the record clearly reveals that the Plaintiff suffered from documented impairments causing significant limitations. (Doc. 21, p. 7, 11).

### A. The ALJ did not err in determining that the Plaintiff had the RFC to perform light work.

Plaintiff argues that the ALJ erred in determining that the Plaintiff had the RFC to perform light work because the ALJ failed to consider all of the medical evidence and the opinions by the examining and non-examining physicians. The Commissioner argues and the record shows that the ALJ properly considered and weighed all of the evidence in making the RFC determination.

The ALJ has the responsibility of assessing a Plaintiff's RFC. *See* 20 C.F.R. §416.946©). The assessment of a Plaintiff's RFC is based on an evaluation of all the relevant evidence, including the medical evidence. *See* 20 C.F.R. § 416.945(a). The ALJ is required to, "state with particularity the weight he gave the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279-80 (11th Cir. 1987)."[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision . . . " *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). The Court must determine, "whether the ALJ's conclusion as a whole was supported by substantial evidence in the record. *Id.* Although the ALJ does not need to refer to every piece of evidence in her decision, "the ALJ must state with some measure of clarity the grounds for [her] decision." *Winschel v. Comm'r of Soc. Sec.*, 631 F. 3d 1176, 1179-80 (11th Cir. 2011).

The ALJ considered the medical records of the Plaintiff's treating physician, Dr. Beltre; Plaintiff's hospital records, and the reports of Drs. Ranganathan and Hinkeldey. (Tr. 21). Furthermore, the ALJ accurately referred to these records throughout the decision (Tr. 14-22). The ALJ discussed

in detail the Plaintiff's activities in daily living, social function, and Plaintiff's capabilities with concentration, persistence or pace, and addressed all of the Plaintiff's alleged impairments in making the decision. (Tr. 17, 19-22). The ALJ correctly determined the Plaintiff's RFC.

The Plaintiff also argues that the ALJ failed to consider the opinions of Drs. Hinkeldey, Weber and Green. (Doc. 21, p. 8). The ALJ's decision adequately stated these doctors opinions and diagnoses. The ALJ stated that although the Plaintiff has impairments, "no state agency reviewer/consultant/examiner has concluded that the claimant has an impairment or combination of impairments severe enough to meet or equal a listing." (Tr. 16-17). The ALJ referred to Dr. Hinkeldey's psychological consultative examination of the Plaintiff where Dr. Hinkeldey diagnosed the Plaintiff with moderate difficulties in concentration, persistence or pace. (Tr. 17-18). The ALJ also stated that Dr. Hinkeldey noted that the Plaintiff's, "thought processes were generally logical and coherent, there was no indication of delusions or other psychotic thought process, and no reports of suicidal or homicidal ideation." (Tr. 20). Additionally, Plaintiff, "was adequately oriented, attention and concentration were adequate, recent and remote memory appeared intact, and judgment and insight appeared adequate." (Tr. 20).

The Plaintiff argues that Drs. Weber and Green had different medical conclusions for the Plaintiff's Mental RFC Assessment which the ALJ failed to adequately reconcile. (Doc. 21, p. 9-10). However, a review of each doctor's Mental RFC chart and conclusions reveals that they are nearly identical. (Tr. 488-489, 524-546). Dr. Weber's Mental RFC conclusion stated that the Plaintiff, "Would be able to understand and remember simple instructions but would have difficulties with more detailed instruction."(Tr. 526). Dr. Weber also concluded that the Plaintiff, "Would be able to

-14-

complete simple tasks/work procedures . . ." (Tr. 526). Dr. Green's Mental RFC assessment stated the Plaintiff's ability to understand and remember very short and <u>simple instructions</u> was not significantly limited. (Tr. 488).

The Plaintiff argues that the diagnosis of fibromyalgia, "could explain some of [the Plaintiff's] pain complaints, but, once again evidence was ignored . . ." (Doc. 21, p. 10). The ALJ stated that although the allegations of fibromyalgia and asthma were, "supported by some objective medical evidence, the alleged limitations did not last longer than twelve months, nor did they cause significant limitations in the [Plaintiff's] ability to perform basic work function; thus, the undersigned finds them non-severe." (Tr. 16).

**B.     The ALJ properly evaluated the credibility of plaintiff's**

     **subjective complaints.**

"If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true." *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir.1995)(citing *Cannon v. Bowen,* 858 F.2d 1541, 1545 (11th Cir.1988)).

The Plaintiff alleges that the ALJ failed to make accurate and specific findings as to the Plaintiff's credibility for disregarding the Plaintiff's subjective pain testimony. (Doc., 21 p. 12). Specifically, that it is not clear what evidence the ALJ utilized when making the RFC and credibility determination. (Doc., 21 p. 12-13). However, the record shows the ALJ addressed all of the Plaintiff's impairments. In considering the Plaintiff's symptoms, the ALJ used a two-step process. (Tr. 18). First, the ALJ, "determined whether there [was] an underlying medically determinable physical or mental

impairment(s) . . . that could reasonably be expected to produce the Plaintiff's pain or other symptoms." (Tr. 18-19). Second, the ALJ evaluated the, "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities." (Tr. 19). The ALJ concluded that the Plaintiff's, "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."(Tr. 19).

The ALJ also addressed the Plaintiff's diabetic condition. The ALJ stated that the Plaintiff was counseled about diet, weight loss, and complying with her medications in January 2006. (Tr. 19). The ALJ also noted that two months later the Plaintiff's diabetic condition was, "uncontrolled but that [the Plaintiff] had stopped taking her insulin medication on her own and was counseled again about weight loss and medication compliance." (Tr. 19). The ALJ noted that the Plaintiff's diabetes was better controlled when the Plaintiff saw her treating physician Dr. Beltre in February of 2008. (Tr. 19).

The ALJ next determined that the Plaintiff's, "allegations of generalized pain all over her body are not supported by the objective medical evidence." (Tr. 19). The ALJ cited Plaintiff's trip to the emergency room in September 2007, where an MRI of her spine showed, "only a shallow central-to-right L5/S1 posterior protrusion without any nerve impingement. (Tr. 19). Dr. Ranganathan noted in his examination, "mild tenderness in the lumbosacral spine . . . negative straight leg raise bilaterally and no other joint effusion, heat, redness, swelling or tenderness." (Tr. 19). The ALJ stated that Dr. Ranganathan's report indicated Plaintiff exhibited, "5/5 strength in her hands with gross and fine manipulations preserved and her motor system strength was 5-/5 and equal bilaterally." (Tr. 20).

Plaintiff's subsequent consultative exam with Dr. Ranganathan revealed no changes but Dr. Ranganathan added possible osteoarthritis of the knees and ankle in the diagnostic impression. (Tr. 20).

The ALJ also reported Plaintiff's trip to the emergency room in June 2008, complaining of, "headaches and pain all over her body." (Tr. 20). The examination revealed, "normal inspection of her back and her extremities were non-tender, with full range of motion . . . [Plaintiff] was discharged two hours later when her headache was gone." (Tr. 20).

Additionally, the ALJ noted that after the Plaintiff's fall (where she injured her left ankle and knee) the Plaintiff did not follow up with her primary care physician and/or orthopaedic surgeon as directed by the emergency room attending physician. (Tr. 20).

The ALJ also found limited evidence to support the Plaintiff's depression as a disabling limitation. The ALJ noted from the records at Park Place Behavioral Health Care that the Plaintiff, "received some treatment for symptoms related to depression." (Tr. 20). However, the ALJ stated that the physicians reported that the Plaintiff had, "good appetite, no sleeping disturbances, and normal energy level." (Tr. 20). Furthermore, the Plaintiff's mental examinations revealed that the Plaintiff, "appeared casual and cooperative, was alert and oriented x4, thought process was logical mood and affect was euthymic and animated with good eye contact, and her insight judgment was fair and adequate." (Tr. 20). The ALJ stated that while the Plaintiff was diagnosed with bipolar-I disorder with depressed mood the Plaintiff, "has not sought any additional mental health treatment since July 2007." (Tr. 20).

The ALJ discussed the Plaintiff's mental health from Dr. Hinkeldey's psychological consultative exam in September 2007. The ALJ noted Dr. Hinkeldey's diagnosis of a depressive disorder and that cognitively the Plaintiff, "was adequately oriented, attention and concentration were adequate, recent and remote memory appeared intact, and judgment and insight appeared adequate." (Tr. 20). The ALJ properly evaluated the credibility of the Plaintiff's subjective complaints.

### IV.  Conclusion

Accordingly, the ALJ's decision is consistent with the requirements of the law and supported by substantial evidence. Therefore, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Chambers in Ft. Myers, Florida this 10th day of July, 2012.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record